**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISON**

| | | |
|---|---|---|
| JAMES DEAN FOUNTAIN, | § | |
| | § | **CIVIL ACTION FILE NO.:** |
| *Plaintiff*, | § | |
| | § | |
| *-versus-* | § | |
| | § | |
| **CLINCH COUNTY, GEORGIA**; | § | |
| **RAYMOND PETERSON**, Individually | § | **COMPLAINT FOR DAMAGES** |
| and in his Official Capacity as Sheriff | § | |
| of the Clinch County Sheriff's Office; and | § | |
| **JAMES SMITH**, Individually and in his | § | |
| Official Capacity as Deputy with the | § | |
| Clinch County Sheriff's Office, | § | |
| | § | **JURY TRIAL DEMANDED** |
| *Defendants*. | § | |

---

## COMPLAINT FOR DAMAGES

---

**COMES NOW** the Plaintiff, **JAMIE DEAN FOUNTAIN** (hereinafter "Fountain"), by and through the undersigned counsel, and pursuant to Fed. R. Civ. P. 15(a), files this, his ***Complaint for Damages*** against Defendants **Clinch County, Georgia, (former) Sheriff Raymond Peterson**, and **(former) Deputy James Smith** by stating as follows:

### INTRODUCTION

1.0    This is a civil rights action brought pursuant to 42 U.S.C. §1983, §1985 and §1988 alleging violations of the Eighth and Fourteenth Amendments to the United States and Georgia Constitutions.

1.1    Defendants' actions, omissions and deliberate indifference to violations of clearly established constitutional rights caused Mr. **FOUNTAIN** to suffer physical, mental and emotional injuries.

1.2    Mr. **FOUNTAIN** seeks compensatory and punitive damages.

## <u>JURISDICTION AND VENUE</u>

2.0    Jurisdiction is based upon 28 U.S.C. §1331 and §1343, and 42 U.S.C. §1983 and §1988. This Honorable Court has jurisdiction of the subject matter because this action asserts claims arising under the Constitution, laws or treaties of the United States.

2.1    This Honorable Court has personal jurisdiction over Defendant **Clinch County, Georgia**, organized and existing under the laws of the State of Georgia, and over Defendants **Raymond Peterson** and **James Smith**, former Sheriff and former investigator/deputy sheriff, respectively, of the Clinch County Sheriff's Office, and because they are domiciled in the State of Georgia and/or acted and caused injury within the Clinch County, Georgia.

2.2    Mr. **FOUNTAIN**, a resident and citizen of Clinch County, Georgia, has satisfied the requirements of O.C.G.A. §36-33-5 by providing Defendant **Clinch County, Georgia** with *ante litem* notice within twelve (12) months of Mr. **FOUNTAIN's** claims, a copy of which is attached hereto as **Exhibit A** and made a part hereof by reference.

2.3    Venue is proper in the Middle District of Georgia under 28 U.S.C. §1391 because a substantial part of the events giving rise to Mr. **FOUNTAIN's** claims occurred in this district and at least one defendant resides within the Middle District of Georgia.

## PARTIES

3.0    Plaintiff **JAMES DEAN FOUNTAIN** was, at all times relevant to this **Complaint for Damages**, a United States citizen and resident of Homerville, Clinch County, Georgia. Mr. **FOUNTAIN** was an adult male at the time of the statutory and constitutional violations at issue.

3.1    Defendant **Clinch County, Georgia** ("County" or "Clinch County") is a county organized and existing under the laws of the State of Georgia. Pursuant to O.C.G.A. §9-11-4(e)(5), Clinch County may be served through the Clinch County Administrator located at 22 Court Square, Suite B, Homerville, Georgia 31634.

3.2    Defendant **Sheriff Raymond Peterson** ("Peterson") was the *former* Sheriff of the Clinch County Sheriff's Office at all times relevant to the allegations in this **Complaint for Damages**. At all times relevant hereto, Defendant **Peterson** acted individually <u>and</u> under color of state law and was charged with providing for Mr. **FOUNTAIN's** safety and well-being and the protection of his civil rights. He may be served at 6065 Lakeland Highway, Dupont, Georgia 31630

3.3    Defendant **James Smith** ("Smith") was a former Deputy with the Clinch County Sheriff's Office at all times relevant to the allegations in this **Complaint for**

**Damages**. At all times relevant hereto, Defendant **Smith** acted under color of state law and was charged with providing for Mr. **FOUNTAIN's** safety and well-being and the protection of his civil rights. He may be served at the Coffee County Sheriff's Office located at 825 Thompson Drive in Douglas, Georgia 31535.

3.4    The Clinch County Sheriff's Office was under the control and authority of the Sheriff, Defendant **Peterson** at all times relevant to the allegations in this **Complaint for Damages**.

## SUMMARY OF THE FACTS

4.0    On September 3, 2019, Mr. **FOUNTAIN** was incarcerated for alleged offenses in Clinch County, Georgia. However, he was housed in the Coffee County Jail.

4.1    On said date, Mr. **FOUNTAIN** had a court appearance before the Clinch County Superior Court. At the conclusion of his legal matters, Deputies Austin Saenz and Greg Morgan of the Clinch County Sheriff's Office failed to transport Mr. **FOUNTAIN** back to the Coffee County Jail; instead, they left him at the Clinch County Courthouse located at 115 Court Square, Homerville, Georgia.

4.2    Realizing that he had been left, Mr. **FOUNTAIN** climbed through the ceiling and exited through the ceiling of the Investigation Office of the Clinch County Sheriff's Office.

4.3     The following day, Mr. **FOUNTAIN** contacted his brother, Chad Douglas, who was picked up by Defendant Smith and Detective Crystal Peterson to locate Mr. **FOUNTAIN**.

4.4     At or about 1:00 p.m. on September 4, 2019, Mr. **FOUNTAIN** called his brother, Chad Douglas, and asked him (Douglas) to meet on Richard James Road in Clinch County, Georgia. Defendants **Peterson** and **Smith** proceeded to the location along with Detective Crystal Peterson who was riding with Defendant **Peterson**.

4.5     Upon arriving at the location on Richard James Road, said law enforcement personnel observed two vehicles in the roadway – Chad Douglas' vehicle and a burgundy Hyundai Sonata operated by Mr. **FOUNTAIN**. Mr. Douglas was observed leaning in the driver's side window of the vehicle and Jessica Newbern was a passenger in the Hyundai Sonata.

4.6     As the officers arrived on the scene and exited their vehicles, Mr. Douglas told Ms. Newbern, "Get out of the car … they're fixing to kill him."

4.7     As Ms. Newbern exited the Hyundai Sonata, Mr. Douglas backed away from the driver's door as Defendant Peterson approached the driver's side with his service revolver drawn; Defendant Smith approached on the passenger side with his service revolver drawn.

4.8     At the time, Mr. **FOUNTAIN** was not armed and was not threatening or combative; he simply sat in the vehicle as the officers approached. Further, no officer

observed a weapon of any kind on Mr. **FOUNTAIN** or in the vehicle such that they had reason to fear for their safety.

4.9     As Deputy Peterson approached Mr. **FOUNTAIN's** vehicle, he shouted, "Jamie stop" and immediately discharged his service revolver at the rear tire of the vehicle. Defendant Peterson shouting for Mr. **FOUNTAIN** to stop was simply a ploy to justify firing his weapon at the tire and to justify Defendant Smith firing his weapon into the vehicle at an unarmed suspect and to allege that he (Smith) believed that Defendant Peterson was in danger.

4.10    In response to Defendant Peterson's actions, Defendant Smith commenced firing his weapon inside Mr. **FOUNTAIN's** vehicle striking him in his mid-back. As the Defendants fired their service revolvers at Mr. **FOUNTAIN**, they were not in harm's way because they were standing to the side of the passenger vehicle.

4.11    Fearing for his life, Mr. **FOUNTAIN** put the vehicle in drive and drove forward, *away* from the officers, for approximately 50 yards until he no longer heard gun shots. He then exited his vehicle, positioned himself on the ground and informed the officers that he had been shot.

4.12    While lying on the ground, one of the Defendants handcuffed Mr. **FOUNTAIN** who was complaining about being shot in the back.

4.13    In an effort to provide some relief for the gunshot wound, Detective Crystal Peterson poured water on Mr. **FOUNTAIN**; no other medical attention was rendered.

4.14   Ms. Newbern and Mr. Douglas, witnesses to the incident, confirm that Mr. **FOUNTAIN** was not armed, made no furtive action to suggest he was about to flee the scene or harm the officers, and possessed no weapons or drugs in the vehicle. In fact, no drugs or weapon were found in Mr. **FOUNTAIN's** vehicle.

4.15   Defendants Peterson and Smith fired their weapons at Mr. **FOUNTAIN** out of anger because they were of the opinion that he had escaped and tampered with evidence the day before.

4.16    Mr. **FOUNTAIN** was released from jail or the custody of the Clinch County Sheriff's Office in order to obtain medical treatment.

### A.    FOUNTAIN'S INJURIES

5.0    As a result of the gunshot wound to his back, medical personnel were contacted and dispatched to the scene. Based on the extent of his injuries, Mr. **FOUNTAIN** was airlifted to Tallahassee Memorial Hospital in Tallahassee, Florida.

5.1    Mr. **FOUNTAIN** suffered a collapsed lung and underwent major surgery; however, the bullet could not be removed and presently remains lodged in his liver.

5.2    As a result of the horrific measures taken by Defendants Peterson and Smith and the injuries he suffered, Mr. **FOUNTAIN** has had to seek psychiatric attention at Savannah Regional and Legacy in Valdosta.

5.3    Mr. **FOUNTAIN** has incurred medical expenses as a result of being shot in the back. He was treated at several medical facilities and continues to be in need of medical and psychological attention/care. Presently, the bullet remains lodged near

Mr. **FOUNTAIN's** spine and he continues to suffer from the emotional trauma caused by this event.

5.4    Presently, Mr. **FOUNTAIN's** medical expenses are in excess of $50,000.00.

**B.**    **<u>Sheriff Peterson's Law Enforcement Background</u>**

6.0    At the time of this incident, Defendant Peterson had been in law enforcement for more than ten years.

6.1    During his career, Defendant Peterson received training in the areas of "use of force" or "use of deadly force".

6.2    Defendant Peterson also received training in De-Escalation Options for Gaining Compliance.

**C.**    **<u>Deputy Smith's Law Enforcement Background</u>**

7.0    At the time of this incident, Defendant Smith had been in law enforcement for more than seven years. He is currently employed as a law enforcement officer.

7.1    During his career, Defendant Smith has received training in the areas of "use of force" or "use of deadly force".

7.2    Defendant Smith has also received training for De-Escalation Options for Gaining Compliance.

7.3    Defendant Smith's shooting Mr. **FOUNTAIN** as he was compliant, unarmed and non-threatening was unnecessary and illegal, as there was no reason to believe that Mr. **FOUNTAIN** was about to commit a crime, was armed and dangerous or presented any danger or threat to anyone.

7.4    After shooting Mr. **FOUNTAIN** without provocation, Defendant Smith restrained Mr. **FOUNTAIN's** arms and placed him in handcuffs.

7.6    This use of force by Defendant Smith was unnecessary and excessive given the circumstances.

7.7    Defendant Peterson's discharge of his firearm at Mr. **FOUNTAIN's** rear tire was unnecessary and without justification considering Mr. **FOUNTAIN** was compliant, unarmed and non-threatening. He presented no danger or threat as the officers approached his vehicle from the rear.

7.8    This use of force by Defendant Peterson was unnecessary and excessive and directly started the chain of events leading to Defendant Smith discharging his weapon into the interior of Mr. **FOUNTAIN's** vehicle.

**D.    Escape Crimes are not Unusual to the Clinch County Sheriff's Office**

8.0    It is a routine part of the business of the Clinch County Sheriff's Office for its officers to encounter inmates who flee and elude and/or have escaped and make contact with persons who are the subject of the escape.

8.1    In these routine situations, an officer's actions are restricted by clear constitutional rules. Here, Defendants Peterson and Smith violated those rules whereas Mr. **FOUNTAIN** had committed no crime in their presence that would justify either officer discharging his weapon. At the time of the shooting, Mr. **FOUNTAIN** was simply sitting in the vehicle and was not acting in a threatening manner towards either officer and was not a threat to any citizen.

8.2    Even if it presumed Mr. **FOUNTAIN** had escaped, such an offense was without the threat of violence whereas Mr. **FOUNTAIN's** absence was not noticed until the following day (after his court appearance).

8.3    Any crime *allegedly* committed by Mr. **FOUNTAIN** was "relatively minor in the context of [the Eleventh Circuit's] Fourth Amendment case law." See generally, ***Massie v. Cobb Cty., Georgia***, 255 F. Supp. 3d 1302, 1309 (N.D. Ga. 2017).

8.4    It is highly predictable that constitutional violations will occur if officers are not trained and supervised regarding the limits on police officers' authority to discharge their service revolver.

8.5    It is highly predictable that violations of these constitutional rules will lead to unnecessary physical confrontations, unlawful arrests (to justify the force used by the officer), and injuries to innocent citizens who oppose police officers who violate these constitutional rules.

8.6    It is well known to experienced law enforcement officers like Defendants Peterson and Smith, the Clinch County Sheriff's Office and Defendant Clinch County, Georgia's policymakers that officers, without proper training and supervision regarding the limits of their authority, are likely to violate the constitutional rules related to discharging their weapons in an effort to be "proactive" in stopping crime and under the general mantra "better safe rather than sorry."

8.7    That is particularly true here because the Clinch County Sheriff's Office and Defendant Clinch County, Georgia evaluated officers' performance based in part on

their statistics for "self-initiated" contacts, arrests, and tickets, thereby encouraging officers to be aggressive in their approaches to allegedly suspicious persons.

8.8    In fact, the policies and practices of many Sheriff Offices regarding when and under what circumstances to discharge their service revolver have come under scrutiny in recent years, especially in the past several years.

8.9    Defendant Peterson and County policymakers knew to a moral certainty that the Clinch County Sheriff's deputies would regularly confront the questions of (**i**) whether discharging a service revolver was permissible and (**ii**) whether un-holstering a service revolver was justified.

8.10   Nevertheless, Defendants Peterson and/or Clinch County, Georgia policymakers, with deliberate indifference, failed to take steps to insure that officers were trained and supervised regarding the constitutional limits of officers' authority in these areas.

8.11   As a result of this incident, neither Defendants Peterson nor Clinch County, Georgia took any disciplinary action towards Defendant Smith.

8.12   Defendant Peterson's and Defendant Clinch County, Georgia's lack of any disciplinary action regarding Defendants and permitting them to remain on Clinch County payroll clearly indicates that said Defendants do not believe Defendants Peterson and Smith violated any County policy or Standard Operating Procedure for the Clinch County Sheriff's Office.

8.13   The inaction on Defendant Peterson's and Clinch County, Georgia's part constitutes a ratification of Defendant Peterson's and Smith's constitutional violations.

8.14   The foregoing acts, omissions, and systemic failures and deficiencies are policies and customs of Defendant Peterson and the Defendant Clinch County, Georgia and caused officers to believe that constitutional violations would be tolerated and that complaints would not be honestly or properly investigated, with the foreseeable result that officers would violate the constitutional rights of Mr. **FOUNTAIN** and other similarly-situated citizens.

## <u>COUNT I</u> – 42 U.S.C. §1983 - EXCESSIVE FORCE (Peterson, Smith and Clinch County)

9.0    Mr. **FOUNTAIN** incorporates the above paragraphs as if fully stated herein.

9.1    On or about September 4, 2019, Defendants Peterson and Smith, acting individually and under color of law within the meaning of 42 U.S.C. §1983, assaulted and battered Mr. **FOUNTAIN**, thereby depriving Mr. **FOUNTAIN** of his rights under the Fourth and Fourteenth Amendments to the Constitution of the United States in violation of 42 U.S.C. §1983. Specifically, he violated Mr. **FOUNTAIN's** right to be free from excessive force.

9.2    Defendants Peterson and Smith acted with malice or reckless indifference to Mr. **FOUNTAIN's** constitutional rights.

9.3    Defendants Peterson and Smith was required by law to use only an appropriate level of force to restrain Mr. **FOUNTAIN**, provided Mr. **FOUNTAIN** needed to be restrained.

9.4    Defendants Peterson and Smith knew that using excessive force on Mr. **FOUNTAIN** was inappropriate and unconstitutional, as a violation of his rights against cruel and unusual punishment.

9.5    Nonetheless, Defendants Peterson and Smith physically assaulted Mr. **FOUNTAIN** on September 4, 2019 by shooting him as he sat in his vehicle, unarmed and non-threatening.

9.6    Defendants Peterson and Smith forcibly seized Mr. **FOUNTAIN** by unjustifiably shooting him.

9.7    Defendants Peterson and Smith knowingly and deliberately used excessive force on Mr. **FOUNTAIN**, causing him serious and permanent injuries.

9.8    At the time that Defendants Peterson and Smith assaulted Mr. **FOUNTAIN**, he (Fountain) did not pose a threat of danger to either officer. In fact, he was compliant and cooperative.

9.9    Defendants Peterson and Smith exhibited deliberate indifference to the safety and well-being of Mr. **FOUNTAIN** and subjected Mr. **FOUNTAIN** to the unnecessary and wanton infliction of pain, suffering and violence, which constituted cruel and unusual punishment.

9.10   In so doing, Defendants Peterson and Smith violated Mr. **FOUNTAIN's** constitutional rights.

9.11   Clinch County Sheriff's Office's (under the leadership of Defendant Peterson) and Clinch County, Georgia's policies and customs, including those regarding the investigation of citizen complaints and tolerance for constitutional violations in general, were the driving force behind Defendant Peterson's and Smith's violation of Mr. **FOUNTAIN's** Fourth Amendment rights.

9.12   As a result of the conduct of Defendants, Mr. **FOUNTAIN** has been caused to suffer physical and emotional injuries and damages and has been caused to incur medical bills and other expenses in an amount to be proven at trial.

9.13   As a direct and proximate result of Defendants' unlawful actions, Mr. **FOUNTAIN** suffered severe physical and emotional injuries and damages in an amount to be proven at trial.

## <u>COUNT II</u> – STATE LAW – ASSAULT AND BATTERY/EXCESSIVE FORCE (Smith Only)

10.0   Mr. **FOUNTAIN** incorporates the above paragraphs as if fully stated herein.

10.1   On or about September 4, 2019, Defendant Smith assaulted and battered Mr. **FOUNTAIN** without a warrant and without probable cause or reasonable suspicion that he was armed and dangerous or was wanted for a violent felony. At best, he was wanted for escape and tampering with evidence.

10.2   On or about September 4, 2019, Defendant Smith assaulted and battered and used excessive force on Mr. **FOUNTAIN** by unjustifiably shooting him.

10.3   The conduct of Defendants Peterson and Smith was either negligent, wanton, malicious, willful, or in bad faith.

10.4   As a result of the conduct of Defendant Smith, Mr. **FOUNTIAN** has been caused to suffer physical and emotional injuries and damages and has been caused to incur medical bills and other expenses in an amount to be proven at trial.

## COUNT III – STATE LAW – ASSAULT AND BATTERY/EXCESSIVE FORCE (Peterson Only)

11.0   Mr. **FOUNTAIN** incorporates the above paragraphs as if fully stated herein.

11.1   On or about September 4, 2019, Defendant Peterson seized Mr. **FOUNTAIN** using excessive force that was not supported by probable cause.

11.2   The conduct of Defendant Peterson was either negligent, wanton, malicious, willful, or in bad faith.

11.3   As a result of the conduct of Defendant Peterson, Mr. **FOUNTAIN** has been caused to suffer physical and emotional injuries and damages and has been caused to incur medical bills and other expenses in an amount to be proven at trial.

## COUNT IV – STATE LAW – NEGLIGENT HIRING, TRAINING *and* SUPERVISION

12.0   Mr. **FOUNTAIN** incorporates the above paragraphs as if fully stated herein.

12.1   Defendant Peterson was negligent in hiring and training Defendant Smith and was negligent in executing the training he (Peterson) received as a certified peace

officer and in supervising his officers and enforcing the approved policies and procedures of the Clinch County Sheriff's Office.

12.2   Defendant Peterson, under the authority of law, owed a duty to Mr. **FOUNTAIN** to ensure his safety and well-being while in and under his control and authority.

12.3   Defendant Peterson failed to properly supervise and train his officers. Defendant Peterson also negligently hired and/or maintained officers, like Defendant Smith, whom he knew or should have known was violent and aggressive. He (Peterson) also failed to properly adhere to the training he received as a peace officer. Defendants Peterson and Smith and other officers, like Deputy Crystal Peterson, worked together to cover-up unconstitutional actions described herein and/or fail to intervene when other officers used excessive force.

12.4   Defendant Peterson, at all times relevant hereto, had procedures and policies that allowed his officers to illegally detained and arrest suspects and use excessive force without proper training. The aforementioned policies and procedures caused Mr. **FOUNTAIN** to be deprived of rights secured by the United States Constitution, the Georgia Constitution, and other laws of Georgia.

12.5   Defendant Peterson's policies and procedures fostered the environment that allowed his officers to assault, batter, and threaten Mr. **FOUNTAIN**. Defendant Peterson was aware that he and his officers had engaged in similar conduct prior to this incident, yet, he tool no steps to correct such conduct.

12.6   Defendant Peterson's negligent hiring, retention, failure to properly train and supervise his officers deprived Mr. **FOUNTAIN** of his rights guaranteed by the Constitution and state laws. The Defendants acted with reckless and grave indifference to the impact and consequences of their actions within the meaning of 42 U.S.C. §1983, *et seq.*, and Eighth Amendment.

12.7   Mr. **FOUNTAIN** seeks damages to compensate him for the injuries sustained due to the violation of his Constitutional and civil rights.

12.8   As a result of the Defendants' conduct, Mr. **FOUNTAIN** has been caused to suffer physical and emotional injuries and damages and has been caused to incur medical bills and other expenses in an amount to be proven at trial.

**A.   Defendant Peterson Has Failed to Correct the Constitutionally Offensive Actions of his Officers.**

12.9   Defendant Peterson and/or the Clinch County Sheriff's Office have had a persistent and widespread practice of:

     a.   Allowing officers to use unreasonable and excessive force without justification;

     b.   Allowing officers to violate the Clinch County Sheriff's Office's own policies and procedures or Standard Operating Procedures;

     c.   Failing to properly train and supervise officers; and

     d.   Failing to enforce policies, failing to properly train officers, and failing to properly discipline officers, thus, creating a culture within the Clinch County Sheriff's Office wherein violating citizens' civil rights is tolerated or encouraged.

12.10 Defendant Peterson had been aware of the widespread pattern and practice of past and present police misconduct regarding use of force and mistreatment of non-law enforcement persons but failed to act.

12.11 Defendant Peterson persistently failed to take adequate disciplinary action against his officers, such that he ratified the widespread unconstitutional custom of his officers' routine use of excessive force and mistreatment of non-law enforcement persons.

12.12 Further, the Clinch County Sheriff's Office's Code of Silence[1], although unwritten, was a policy that directly caused Mr. **FOUNTAIN's** injuries.

12.13 Prior to Mr. **FOUNTAIN's** incident, there are other examples of similar constitutionally, offensive conduct that Defendant Clinch County, Georgia has ratified through its inaction or, alternatively, through the Code of Silence. Past complaints against officers employed with the Clinch County Sheriff's Office include (or similar to) the following:

1. Racial/Biased Based Profiling:
2. Rude, Aggressive, Unprofessionalism
3. Improper Conduct
4. Excessive Force
5. Conduct Unbecoming
6. Mistreatment of Citizen/Disrespect
7. Illegal/Improper Arrest

[1] The Code of Silence is a practice pursuant to which police officers refuse to bear witness against a fellow officer who is alleged to have violated a citizen's rights or otherwise engaged in misconduct. A retired City of Atlanta police major has confirmed the Code of Silence and provided sworn testimony that excessive force was not unusual on the Atlanta police force and that officers often protected one another with a "code of silence." *See* Human Rights Watch, https://www.hrw.org/legacy/reports98/police/uspo44.htm#P1453_352304.

8. Harassment
9. Rape or facilitating the rape of a female inmate

12.14 In the past, citizens have complained about some form of mistreatment by officers with the Clinch County Sheriff's Office. Regardless of whether these complaints were confirmed as a result of the Clinch County Sheriff's Office investigating itself, it is clear that each complainant was convinced that the officer they encountered acted inappropriately and warranted corrective action by Defendant Clinch County, Georgia and the Clinch County Sheriff's Office.

12.15 Clinch County Sheriff's Office's Code of Silence and persistent and widespread failure to take adequate disciplinary action against its officers' routine rudeness, improper conduct, mistreatment of citizens, excessive use of force, improper supervision and training of its officers, or failure to enforce written policies resulted in the violation of Mr. **FOUNTAIN's** constitutional rights and proximately caused serious and permanent injury. This occurred under the leadership of Defendant Peterson.

12.16 As a result of the Defendants' conduct, Mr. **FOUNTAIN** has been caused to suffer physical and emotional injuries and damages and has been caused to incur medical bills and other expenses in an amount to be proven at trial.

## <u>COUNT V</u> – NEGLIGENT and INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

13.0    Mr. **FOUNTAIN** incorporates the above paragraphs as if fully stated herein.

13.1    As stated above, the actions of Defendants Peterson and Smith, employed through the Clinch County Sheriff's Office in connection with the aforementioned events of September 4, 2019, constitute intentional infliction of emotional distress for which Mr. **FOUNTAIN** may recover against Defendants.

13.2    Defendants caused Mr. **FOUNTAIN** emotional trauma that was outrageous and egregious. Defendants inflicted emotional trauma on Mr. **FOUNTAIN** by hiring and retaining Defendants Peterson and Smith, entrusting them to be officers with the Clinch County Sheriff's Office, and failing to train and supervise them properly; by Defendants violating Mr. **FOUNTAIN's** statutory and constitutional rights; and by Defendant Peterson's failure to protect Mr. **FOUNTAIN** from Defendant Smith's unconstitutional conduct and by Peterson's actions (i.e., shooting at Fountain's tire), which directly led to Defendant Smith intentionally and knowingly firing his weapon at Mr. **FOUNTAIN** who was seated in his vehicle.

13.3    The actions of Defendants in connection with the above-referenced series of events also constitute the negligent infliction of emotional distress upon Mr. **FOUNTAIN**.

13.4   As a result of the Defendants' conduct, Mr. **FOUNTAIN** has been caused to suffer physical and emotional injuries and damages and has been caused to incur medical bills and other expenses in an amount to be proven at trial.

## <u>COUNT VI</u> - FAILURE TO INTERVENE UNDER 42 U.S.C. §1983

14.0   Mr. **FOUNTAIN** incorporates the above paragraphs as if fully stated herein.

14.1   Defendant Smith, while acting under color of law, used excessive force on Mr. **FOUNTAIN**.

14.2   Defendant Peterson was with Defendant Smith, saw him (Smith) walking up to Mr. **FOUNTAIN's** vehicle, and saw him with his firearm un-holstered.

14.3   Defendant Peterson had a realistic opportunity to prevent Defendant Smith from shooting Mr. **FOUNTAIN**. It would have been as simple as holding out his hand or saying, "Stop." Defendant Peterson did neither, knowing that Mr. **FOUNTAIN** was unarmed and no firearm being visible.

14.4   Defendant Peterson deliberately and/or recklessly failed to take reasonable steps to prevent Defendant Smith from using excessive force.

14.5   Defendant Peterson's failure to act caused Mr. **FOUNTAIN's** serious and permanent injuries – injuries that were a reasonably foreseeable consequence of Defendant Smith's conduct and Defendant Peterson's failure to act.

14.6   Defendant Peterson was acting under color law at the time he failed to intervene. Defendant Peterson had a duty to intervene, but failed to do the right thing.

14.7   Instead of intervening or de-escalating the situation, Defendant Peterson exacerbated the situation by standing within feet of Mr. **FOUNTAIN** and firing his weapon at the rear tire which caused Defendant Smith to fire his weapon into the interior of this passenger vehicle, assaulting, battering and violating Mr. **FOUNTAIN's** civil and constitutional rights.

14.8   As a result of the Defendants' conduct, Mr. **FOUNTAIN** has been caused to suffer physical and emotional injuries and damages and has been caused to incur medical bills and other expenses in an amount to be proven at trial.

## <u>COUNT VII</u> – CONSPIRACY TO VIOLATE FOUNTAIN'S RIGHTS

15.0   Mr. **FOUNTAIN** incorporates the above paragraphs as if fully stated herein.

15.1   Prior to Defendant Smith shooting Mr. **FOUNTAIN**, there was no command given to Mr. **FOUNTAIN** as to what action Defendants Peterson and Smith wanted him (Fountain) to undertake.

15.2   The Defendants have alleged that Mr. **FOUNTAIN** stole a firearm from the evidence room of the Clinch County Sheriff's Office, yet, Mr. **FOUNTAIN** has never been charged with such an offense and no forearm was recovered from his person or vehicle in this incident.

15.3   Mr. **FOUNTAIN** did not act in any manner to warrant the abuse he suffered at the hands of two *experienced* law enforcement officers – Defendants Peterson and Smith.

15.4   As a result of the Defendants' conduct, Mr. **FOUNTAIN** has been caused to suffer physical and emotional injuries and damages and has been caused to incur medical bills and other expenses in an amount to be proven at trial.

## COUNT VII – PUNITIVE DAMAGES

16.0   Mr. **FOUNTAIN** incorporates the above paragraphs as if fully stated herein.

16.1   Defendants' actions were willful, deliberate, and in reckless disregard of Mr. **FOUNTAIN's** constitutional rights.

16.2   Defendants' actions show willful misconduct, malice, fraud, wantonness, oppression, and that entire want of care which would raise the presumption of conscious indifference to consequences.

16.3   Accordingly, punitive damages should be imposed against the Defendants pursuant to O.C.G.A. §51-15-5.1 and other applicable laws to deter future violations of fundamental constitutional rights.

## COUNT VIII – ATTORNEY'S FEES

17.0   Mr. **FOUNTAIN** incorporates the above paragraphs as if fully stated herein.

17.1   Mr. **FOUNTAIN** herein was required to retain counsel to represent him in order to protect his rights.

17.2   Pursuant to 42 U.S.C. §1988, Mr. **FOUNTAIN** is entitled to reasonable attorney's fees and costs associated with bringing this action.

## <u>COUNT IX – DEMAND FOR TRIAL BY JURY</u>

18.0   Plaintiff **FOUNTAIN** demands a trial by jury.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff **JAMES DEAN FOUNTAIN** prays that this

Honorable Court award the following relief from Defendants:

a.      An award of compensatory damages for each Count in this cause of
action in favor of Plaintiff for all damages sustained as a result of Defendants'
wrongdoing, and in an amount to be proven at trial, including interest thereon;

b.      An award of punitive damages in favor of Plaintiff against Defendants;

c.      An award of reasonable costs and expenses incurred in this action,
including attorney's fees and expert fees;

d.      That a jury trial be had on all triable issues; and

e.      Such other and further relief as this Honorable Court may deem
equitable, just and proper.

**Respectfully submitted**, this the 2nd day of September, 2021.

**SMITH, HANNAN & PARKER, P.C.**
610 North Patterson Street
Post Office Box 5408
Valdosta, Georgia 31601
Telephone: (229) 242-4649
Facsimile: (229) 242-4947
Email: mhannan@shplaw.com

/s/ *B. Miles Hannan*
B. MILES HANNAN
State Bar No.: 323577

**COPELAND, HAUGABROOK & WALKER**
104 East Adair Street
Post Office Box 1810
Valdosta, Georgia 31601
Telephone: (229) 247-4617
Facsimile: (229) 242-0109
Email: cwlaw02@bellsouth.net

*/s/ Nathaniel Haugabrook, II*
NATHANIEL HAUGABROOK, II
State Bar No. 337970

***Attorneys for Plaintiff***