IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| JAMES DEAN FOUNTAIN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 7:21-CV-120 (WLS) |
| | : | |
| RAYMOND PETERSON | : | |
| and JAMES SMITH, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER

Before the Court is Defendants' Motion for Summary Judgment (Doc. 40). For reasons stated below, Defendants' Motion (Doc. 40) is **GRANTED-IN-PART** and **DENIED-IN-PART**.

## I.    RELEVANT PROCEDURAL BACKGROUND

Plaintiff commenced the present action on September 2, 2021, by filing a Complaint against Defendants Clinch County, Georgia, former Clinch County Sheriff Raymond Peterson ("Defendant Peterson"), and former Clinch County Deputy James Smith ("Defendant Smith"). (Doc. 1). Therein, Plaintiff alleged a deprivation of his civil rights, under 42 U.S.C. § 1983, against all Defendants, as well as a number of state law claims. (*Id.*)

Defendants filed a Motion to Dismiss (Doc. 5) on October 8, 2021. The Court granted-in-part and denied-in-part Defendants' Motion, dismissing all of Plaintiff's claims against Clinch County. (Doc. 11). Thereafter, Plaintiff filed the Amended Complaint (Doc. 30), which became the operative complaint. Therein, Plaintiff alleges a deprivation of his civil rights, under 42 U.S.C. § 1983, as a well as state law claims for Assault and Battery and Intentional Infliction of Emotional Distress.  (Doc. 30 ¶¶ 53–74). On June 27, 2024, Defendants filed the instant Motion for Summary Judgment (Doc. 40). Plaintiff filed a Response (Doc. 47) on August 1, 2024. Defendants subsequently filed a Reply (Doc. 48).

As the Parties have filed their respective briefs, the motion for summary judgment is fully briefed and ripe for the Court's review.

## II.    **RELEVANT FACTUAL BACKGROUND**[1]

On July 16, 2019, then-Sheriff Raymond Peterson ("Defendant Peterson") and Deputy James Smith ("Defendant Smith"), along with other Clinch County law enforcement officials, arrested Plaintiff Jamie Fountain ("Plaintiff") on an outstanding probation revocation warrant issued by a court in Lowndes County, Georgia. (Doc. 47 at 2 ¶ 4). The arrest occurred at a residence in Clinch County, during which Plaintiff was in possession of a shotgun. (*Id.* at ¶ 6). Plaintiff was subsequently charged with Possession of a Firearm by a Convicted Felon, Possession of Methamphetamine, and two counts of Criminal Gang Activity. (*Id.* at ¶ 3). On July 18, 2019, a Clinch County court denied Plaintiff's bond, finding that Plaintiff posed a significant risk of fleeing the jurisdiction or committing a felony before trial, and that Plaintiff posed a significant threat to the community. (Doc. 40-3 at 12). Plaintiff's bond was also denied because of a probation hold resulting from a Lowndes County arrest warrant. (*Id.*) Thus, Plaintiff was remanded to the custody of the Coffee County Sheriff. (Doc. 47-1 at 4 ¶ 9).

On September 3, 2019, Plaintiff was transported from the Coffee County jail to the Clinch County jail for a bond hearing on the pending charges originating from his July 16, 2019 arrest. (Doc. 47-1 at 4 ¶ 10). Plaintiff was one of several inmates transported to Clinch County for court appearances, and due to an oversight by the transporting officer, Plaintiff was left behind in a Clinch County holding cell at the end of the day. (Doc. 47-2 at 3 ¶ 17). Plaintiff escaped from the jail by climbing into the ceiling tiles of the cell and exiting through the jail's administrative office. (Doc. 42-1 at 17–18).

Clinch County law enforcement officials, including Defendant Peterson, were notified the next day, September 4, 2019, when officials in Coffee County noticed Plaintiff's absence. (Doc. 42-2 at 19). Defendant Smith and Clinch County Investigator Crystal Peterson ("Investigator Peterson") made contact with Plaintiff's brother, Chad Douglas, who offered to assist law enforcement officers in locating Plaintiff. (Doc. 47-1 at 7 ¶ 19). Mr. Douglas arranged to meet Plaintiff on a dirt road in a rural part of the county. (*Id.*) Douglas then notified

---

[1] The following facts are derived from Plaintiff's Complaint (Doc. 1); Defendants' Answer to the Complaint (Doc. 7); Plaintiff's Amended Complaint (Doc. 30); Defendants' Answer to the Amended Complaint (Doc. 31); Defendants Peterson and Smith's Motion for summary judgment (Doc. 40); Plaintiff's Response to Defendants' Motion for summary judgment (Doc. 47); Defendants' Reply (Doc. 48); the Depositions in the Record (Doc. 42); and all exhibits attached to the foregoing documents.

Defendant Smith and Investigator Peterson that Plaintiff and Plaintiff's ex-wife, Jessica Newbern, would be traveling to the meeting place on Richard James Road. (*Id.* at 7 ¶ 20). Defendants and Investigator Peterson drove out to the location. (*Id.* at 6 ¶ 18).

When the officers arrived, they saw a burgundy Hyundai Sonata facing east and a brown Trailblazer, operated by Mr. Douglas, parked side by side. (Doc. 47-1 at 7 ¶ 21). Mr. Douglas was standing next to the Sonata's driver's side window. (*Id.* at 7 ¶ 22). As the officers exited their vehicles and began approaching the vehicles, Jessica Newbern exited the passenger's side of Plaintiff's vehicle and began running toward the rear of the car. (*Id.* at 7 ¶ 24). Investigator Peterson gave chase. (*See* Doc. 42-4 at 40). Defendant Peterson fired a shot at the rear tire of the Sonata. (Doc. 47-2 at 9 ¶ 28). Upon seeing Defendant Peterson fire his weapon, Defendant Smith fired two shots at the back of the car. (Doc. 47 at 6); (Doc. 42-3 at 37–38). No commands or warnings were given prior to shots being fired. (Doc. 47-2 at 5 ¶ 31).

Plaintiff then accelerated the car and began driving away from the officers and witnesses. (Doc. 47 at 6); (Doc. 42-1 at 21). Defendant Smith fired four more shots into the rear of Plaintiff's car as it traveled down Richard James Road. (Doc. 47 at 8); (Doc. 42-3 at 32). One of the shots from Smith's gun struck Plaintiff in the back and lodged in his liver. (Doc. 47-2 at 9 ¶ 60). Plaintiff's car traveled approximately 400 yards down Richard James Road before coming to a stop. (*Id.* at 10 ¶ 65). Officers followed after Plaintiff's car in their patrol vehicles. (Doc. 42-2 at 41–43); (Doc. 42-3 at 41–42). Once officers reached Plaintiff's location, Plaintiff exited the vehicle and was placed in handcuffs without further incident. (*Id.* at ¶¶ 65, 67). Shortly thereafter, Defendants realized that Plaintiff was injured. (Doc. 42-3 at 43). Defendant Smith proceeded to render first aid while Defendant Peterson called for emergency services and the Georgia Bureau of Investigation ("GBI"). (Doc. 47-1 at 10 ¶¶ 32–33).

### III.    LEGAL STANDARD

Under Fed. R. Civ. P. 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).[2]

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "'A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.'" *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the non-moving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by citing to the record, that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The movant can meet that burden by presenting evidence showing there is no dispute of material fact, or by demonstrating that the nonmoving party has failed to present evidence in support of an element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322–24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings and by [nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and

---

[2] Local Rule 56 requires the movant for summary judgment to attach to the motion a separate statement of the material facts about which the movant contends there is no genuine dispute to be tried. M.D. Ga. L.R. 56. The respondent shall attach to their response a separate statement of material facts to which respondent claims there exists a genuine dispute to be tried. The Court notes that the Parties have complied with Local Rule 56.

admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To avoid summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *See Matsushita*, 475 U.S. at 587–88; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## IV.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment on Plaintiff's claims under 42 U.S.C. § 1983 and Georgia state law. (Doc. 40 at 1). Defendants make various arguments, and the Court will address each in turn.

### A.  Qualified Immunity

Defendants Peterson and Smith contend that they are entitled to qualified immunity on Plaintiff's Fourth, Eighth, and Fourteenth Amendment claims. (Doc. 40-1 at 11–14). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* The qualified immunity analysis consists of a two-step inquiry. *Id.* at 231. The first question is whether the facts alleged by the plaintiff set forth a violation of a constitutional right. *Id.* If the plaintiff has satisfied the first step, the second question is whether the right at issue was clearly established at the time of the alleged misconduct. *Id.* Whether qualified immunity is available as a defense is a question of law for the court. *Ansley v. Heinrich*, 925 F.2d 1339, 1348 (11th Cir. 1991).

In the Eleventh Circuit:

> To be eligible for qualified immunity, the official must first establish that he was performing a discretionary function at the time the alleged violation of federal law occurred. Once the official has established that he was engaged in a discretionary function, the plaintiff bears the burden of demonstrating that the official is not entitled to qualified immunity. In order to demonstrate that the official is not entitled to qualified immunity, the plaintiff must show two things: (1) that the defendant has committed a constitutional violation and (2) that the constitutional right the defendant violated was clearly established at the time he did it.

*Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004) (internal quotation marks omitted) (citations omitted). Thus, the Court must first determine whether Defendants Peterson and Smith were engaged in a discretionary function before determining whether Plaintiff has presented relevant facts that either Defendant committed a constitutional violation which was clearly established at the time of the alleged misconduct. "To determine whether an official was engaged in a discretionary function, [a court should] consider whether the acts the official undertook are of a type that fell within the employee's job responsibilities." *Id.* at 1332 (internal citation and quotations marks omitted).

In the instant case, Defendants Peterson and Smith are law enforcement officers facing liability for apprehending and detaining an escaped inmate. (*See generally*, Docs. 40-1 & 47). Plaintiff does not dispute this characterization, (*see* Docs. 47 & 47-1), and the Record evidence is sufficient to show that Defendants were acting in their capacity as law enforcement officers at the time of the incident. (*See generally* Docs. 40-1 & 47). Accordingly, the Court finds that Defendants were engaged in a discretionary function, and thus, turns to the question of whether Plaintiff has presented relevant facts that Defendants committed a constitutional violation, and if so, whether that violation was clearly established at the time of the alleged misconduct.

### B. **Applicable Constitutional Standard**

As an initial matter, the Court must determine which constitutional right governs the analysis of Plaintiff's claim. *See Graham v. Conner*, 490 U.S. 386, 394 (1989) ("In addressing an excessive force claim brought under § 1983, the analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force."). In his Amended Complaint, Plaintiff alleges that Defendants' actions violated his Fourth

Amendment right to be free from excessive force, at Count I, and his Eighth Amendment right to be free from excessive force, at Count II. (Doc. 30 at 10–11). Yet, in his Response, Plaintiff argues that his excessive force claim does not arise under the Eighth Amendment, but rather, the Court should apply either a Fourth Amendment or a Fourteenth Amendment standard. (Doc. 47 at 9–10). Defendants, however, argue that Plaintiff's claim of excessive force is properly analyzed under the Eighth Amendment. (Doc. 40-1 at 4). Defendants also assert in their motion for summary judgment, that Plaintiff's Amended Complaint does not allege sufficient facts to make out a claim under the Fourteenth Amendment. (*Id.* at 5 n. 4).

To the extent Plaintiff might not have sufficiently alleged a Fourteenth Amendment excessive force claim in the Amended Complaint to survive a Rule 12 motion, the Court agrees with Defendants. However, Defendants did not move under Rule 12 to dismiss the claim at that stage in the proceedings. Given Defendants subsequent acknowledgement of that claim in their Motion for Summary Judgment and Plaintiff's significant reliance on the Fourteenth Amendment in his own briefing, the Court must address Plaintiff's Fourteenth Amendment claim on its merits.

All three Amendments relied on by the Parties provide protection from excessive force, but the status of the victim determines which applies to the facts in a specific case. Specifically, "the Fourth Amendment covers arrestees, the Eighth Amendment covers prisoners, and the Fourteenth Amendment covers 'those who exist in the in-between—pretrial detainees.'" *Crocker v. Beatty*, 995 F.3d 1232, 1246 (11th Cir. 2021) (quoting *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 952 (11th Cir. 2019)).

### 1. Eighth Amendment

Defendants, as noted, contend that the Eighth Amendment applies to Plaintiff's excessive force claim. The Eighth Amendment applies only after a person has been convicted, sentenced, and placed in the custody of prison officials. *See Whitley v. Albers*, 475 U.S. 312, 327 (1986) (discussing the Eighth Amendment as "specifically concerned with the unnecessary and wanton infliction of pain in penal institutions"); *see also Graham*, 490 U.S. at 395 n. 10 (noting that the Eighth Amendment provides the "primary source of substantive protection" in excessive force cases "after conviction[.]" (internal citations and quotations omitted)). In other words, the Eighth Amendment's prohibition on cruel and unusual punishment applies to

claims of excessive force brought by prisoners "only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions[,]" *Ingraham v. Wright*, 430 U.S. 651, 664 (1977), and protects those convicted of a criminal offense from the use of excessive force at the hands of government officials if that force is "applied . . . maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. at 320–21.

Here, Defendants argue that Plaintiff was a convicted prisoner at the time of the shooting because he was being held in the Coffee County jail on a probation hold for a forgery conviction in Lowndes County. (Doc. 40-1 at 4). The Court disagrees. Plaintiff pleaded guilty to the unrelated forgery charge and was sentenced to serve five years on probation. (Doc. 47 at 3). Plaintiff, however, violated the terms of his probation and appeared before a Lowndes County court on May 1, 2019, for a revocation hearing. (*Id.* at 4). An order ("May 1, 2019 order") was entered revoking Plaintiff's probation and imposing a new probation sentence, which if violated, would result in Plaintiff serving the rest of his sentence on probation. (Doc. 47 at 4, 11). The May 1, 2019 order did not subject Plaintiff to a period of incarceration if he were to violate the conditions of his new probation sentence. (*Id.*); (*see also* Doc. 40-4). Put differently, the order contained no provision automatically converting the new probation sentence into a prison sentence, without a further judicial determination, in the event of a violation. (*See id.* at 10–12).

Plaintiff was apprehended on July 16, 2019 based on a Lowndes County arrest warrant issued after Plaintiff absconded from a drug rehabilitation program, thereby allegedly violating the conditions of his probation. (Doc. 40-3 at 17). The May 1, 2019 order provided that Plaintiff would "[s]erve the balance of time remaining on said original sentence of probation on probation[,]" a sentence which was "[s]uspended upon [Plaintiff] completing the Refuge of Hope Program[.]"(Doc. 40-4 at 1). At the time of the shooting on September 4, 2019, Plaintiff had not yet been returned to Lowndes County to answer to the charge of violating his probation nor had a court sentenced Plaintiff to serve a period of incarceration for the alleged violation. (Doc. 47 at 11). Rather, as discussed above, Plaintiff was detained pending a trial on the separate charges in Clinch County when the shooting occurred. (Doc. 47-1 at 4 ¶ 10). Thus, because Plaintiff was not serving a sentence or otherwise incarcerated for the prior unrelated conviction in Lowndes County when these events took place, Plaintiff was not

a convicted prisoner. Thus, the Eighth Amendment's protections do not apply to his excessive force claim against Defendants. (*See generally* Docs. 47 & 47-1).

### 2.  Fourth and Fourteenth Amendment

Plaintiff, as noted, contends there is room for debate regarding whether the Fourth Amendment or the Fourteenth Amendment is the proper constitutional standard to apply to his claims. (Doc. 47 at 9). Specifically, Plaintiff says that his claim arguably falls under the Fourth Amendment because Defendants "shot Fountain during an arrest on a *new* charge of 'escape' from custody." (*Id.* at 13). Defendants argue that the Fourth Amendment does not apply because Plaintiff, as an escaped inmate, was already seized within the meaning of the Fourth Amendment when the events of this case occurred. (Doc. 40-1 at 4). The Court agrees with Defendants.

The Fourth Amendment applies to "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a *free* citizen[.]" *Graham*, 490 U.S. at 395 (emphasis added). Whereas the Fourteenth Amendment applies to a pretrial detainee—an individual "lawfully committed to pretrial detention" that has received "a 'judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest.'" *Bell v. Wolfish*, 441 U.S. 520, 536 (1979) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975)). Yet, "the line—for excessive-force purposes—between an arrestee and a pretrial detainee isn't always clear." *Crocker*, 995 F.3d at 1247 (analyzing plaintiff's excessive force claim under both the Fourth and Fourteenth Amendment where it was not obvious whether the plaintiff was an arrestee or pretrial detainee at the time officers left him in a hot patrol car for thirty minutes); *see also Hicks v. Moore*, 422 F.3d 1246, 1253 n. 7 (2005) (applying a Fourth—rather than Fourteenth—Amendment analysis to plaintiff's excessive force claim because Defendants failed to argue that the alleged excessive force was separate from Plaintiff's seizure, even though plaintiff had "already been arrested, delivered to the Jail, and had begun—but not completed—the booking process").

Here, Plaintiff was being held in the Coffee County jail on charges originating from his July 16, 2019 arrest in Clinch County. (Doc. 47-1 at 4 ¶ 9). On July 18, 2019, a Clinch County court denied Plaintiff's bond and remanded him to the custody of the Coffee County Sheriff, finding, among other things, that Plaintiff posed a significant risk of fleeing the jurisdiction.

(Doc. 40-3 at 12). On September 3, 2019, Plaintiff was transported to the Clinch County jail for a court appearance, and it was from there Plaintiff escaped from custody. (Doc. 47-1 at 4 ¶ 10). Because Plaintiff was already in custody, he was not a "free citizen" within the meaning of the Fourth Amendment when the shooting at issue occurred, the Fourth Amendment does not apply. [3]

Instead, when he was denied pretrial release at the July 18, 2019 bond hearing, Plaintiff received "a 'judicial determination of probable cause.'" *Bell*, 441 U.S. at 536. He was therefore a pretrial detainee awaiting trial on the pending Clinch County charges. Accordingly, because Plaintiff was a pretrial detainee, the Court finds, as a matter of law, that the Fourteenth Amendment applies.

### 3. Conclusion: Choice of Law

In conclusion, Plaintiff's claim is properly analyzed under the Fourteenth Amendment.[4] Accordingly, because the Fourth Amendment and Eighth Amendment do not apply, Defendants' motion for summary judgment on Plaintiff's excessive force claim under 42 U.S.C. § 1983, to the extent it relies on the Fourth Amendment and Plaintiff's excessive force claim under 42 U.S.C. § 1983, to the extent it relies on the Eighth Amendment is **GRANTED**.

### C. <u>Plaintiff's Excessive Force Claim</u>

Having determined that Plaintiff's claims are properly analyzed under the Fourteenth Amendment, the Court now turns to whether there is sufficient evidence that Defendants

---

[3] Claims of excessive force arising from the recapture of escaped individuals are rare in the Eleventh Circuit. However, other circuits have declined to apply a Fourth Amendment analysis to claims brought by escapees after conviction. *See Brothers v. Klevenhagen*, 28 F.3d 452 (5th Cir. 1994) (holding that the Due Process Clause, not the Fourth Amendment, provides the excessive force standard for pretrial detainees shot during alleged escape attempts); *Hughes v. Rodriguez*, 31 F.4th 1211, 1221 (9th Cir. 2022) (holding that "the Eighth Amendment applies equally to convicted prisoners inside or outside the walls of the penal institution"); *Gravely v. Madden*, 142 F.3d 345, 346–48 (6th Cir. 1998) (holding that the Eighth Amendment applied to an excessive force claim brought by an escaped convict because "[t]he Fourth Amendment is not triggered anew by attempts at recapture because the convict has already been 'seized,' tried, convicted, and incarcerated").

[4] The Court notes that a similar analysis would apply if Plaintiff's claim arose under the Fourth Amendment. *See Crocker,* 995 F.3d at 1254 (quoting *Piazza,* 923 F.3d at 953) ("We have already observed that 'the Fourteenth Amendment standard [for pretrial detainees] has come to resemble the test that governs excessive-force claims brought by arrestees under the Fourth Amendment.'").

Peterson and Smith violated Plaintiff's due process rights. In conducting the qualified immunity analysis, the Court evaluates each Defendant's actions individually.[5]

A pretrial detainee raising an excessive force claim under the Fourteenth Amendment must show that "the force purposely or knowingly used against him was objectively unreasonable." *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 952 (11th Cir. 2019) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015)). "[A] pretrial detainee can prevail by providing . . . objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley*, 576 U.S. at 398. Whether the force was objectively unreasonable "turns on the facts and circumstances of each particular case." *Id.* at 397 (quoting *Graham*, 490 U.S. at 396). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* In doing so, courts consider: (1) the relationship between the need for force and the amount of force used, (2) the extent of the detainee's injuries, (3) any effort to temper the amount of force, (4) the severity of the security problem, (5) the threat reasonably perceived by the officer, and (6) whether the plaintiff was actively resisting. *Id.* (citing *Graham*, 490 U.S. at 396). Both before *Kingsley* and since, the Eleventh Circuit has reiterated a key principle in pretrial detainee excessive force cases: "because force in the pretrial detainee context may be defensive or preventative—but never punitive—the continuing use of force is impermissible when a detainee is complying, has been forced to comply, or is clearly unable to comply." *Piazza*, 923 F.3d at 953.

Although the *Kingsley* factors are not exclusive, they provide an adequate basis for considering Plaintiff's claim. Thus, the Court now considers each factor in determining whether the force used by Defendant Peterson and Defendant Smith was objectively unreasonable, or in other words, whether the force was "excessive in relation to [its] purpose." *Kingsley*, 576 U.S. at 398.

---

[5] Because § 1983 "requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation, each defendant is entitled to an independent qualified-immunity analysis as it relates to his or her actions and omissions." *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018) (internal citation and quotation omitted) (reversing the denial of summary judgment and remanding to the district court to conduct individualized analysis of whether each defendant is entitled to qualified immunity).

### 1. Defendant Smith

#### a. *Constitutional Violation*

The Court first considers the relationship between the need for force and the amount of force Defendant Smith used. When Defendants Peterson and Smith, along with Investigator Crystal Peterson, arrived at the meeting place on Richard James Road, Defendant Smith parked his patrol vehicle behind Defendant Peterson's vehicle. (Doc. 42-3 at 22). Smith exited his patrol vehicle and approached Plaintiff's car, which was parked and facing in the opposite direction from Defendants. (*See* Doc. 40-2 at 30). Within seconds of walking around Defendant Peterson's vehicle toward Plaintiff's car, Smith fired two shots into the back of Plaintiff's vehicle. (Doc. 47 at 6); (Doc. 42-3 at 37–38).

The need for force in this situation was minimal. The car was stationary, and Plaintiff was unarmed and sitting still inside when Smith fired the first two shots.[6] (Doc. 47 at 15); (Doc. 42-1 at 21–22). Smith could have simply walked up and ordered Plaintiff to exit the vehicle. Instead, Smith fired a total of six shots into the rear of Plaintiff's car, one of which struck Plaintiff in the back. (Doc. 47-1 at 1 ¶ 1); (Doc. 47-2 at 9 ¶ 60). Such force is not proportional to Defendant Smith's need. Thus, the amount of force Defendant Smith used greatly outweighed the force needed to seize Plaintiff and return him to custody. Accordingly, this *Kingsley* factor as well as the second factor—the extent of the plaintiff's injuries—weigh in favor of Plaintiff.

Additionally, there is no indication Defendant Smith made any efforts to temper or limit the amount of force. Smith gave no commands or warnings, nor did he provide Plaintiff with an opportunity to comply with the officers before opening fire on Plaintiff's vehicle.[7]

---

[6] Defendants dispute that Plaintiff's car was stationary when Defendant Smith fired the first two shots at the rear of Plaintiff's car. (*See* Doc. 48 at 2); (*see also* Doc. 40-2 at 4 ¶ 27). Plaintiff, however, testified that he did not put his car into gear and begin driving away until after Defendants began firing at him. (Doc. 42-1 at 18). Defendant Smith also testified that he fired his weapon before Plaintiff's car began to travel down Richard James Road. (Doc. 42-3 at 37). Accordingly, construing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff's car was stationary when Defendant Smith fired the first two shots. Therefore, for the purposes of this motion, no genuine dispute of fact remains as to this issue.

[7] Defendants dispute that no warnings were given before shots were fired, and instead, claim that Defendant Peterson told Plaintiff to stop and not to go anywhere. (*See* Doc. 40-2 at 4 ¶¶ 25–26). Plaintiff, however, testified that he did not have any conversation with Defendant Peterson before being shot at. (Doc. 42-1 at 20–21). Plaintiff also directs the Court to GBI audio interviews of two eyewitnesses who also claim they did not hear either Defendant give Plaintiff any warnings or commands. (Doc. 47-2 at 5 ¶ 31). Accordingly, construing these

(Doc. 47 at 15). Smith then continued firing into the back of Plaintiff's car as Plaintiff drove away from the officers. (*Id.*) Smith stopped firing only after Plaintiff's car came to a standstill further down the road. (*Id.*) Thus, this factor also weighs in Plaintiff's favor.

Defendant Smith, perplexingly asks the Court to view his actions and the events that took place on Richard James Road with the 20/20 vision of hindsight. The *Kingsley* analysis, however, requires the Court to view the facts and circumstances from the perspective and with the knowledge of a reasonable officer on the scene. *Kingsley*, 576 U.S. at 398. Thus, the Court views Defendant Smith's decision to fire his weapon in light of (a) the one previous interaction Smith had with Plaintiff and (b) the circumstances Smith perceived upon arriving at the scene on September 3, 2019. In Smith's only encounter with Plaintiff before the shooting, Smith assisted other Clinch County officers in arresting Plaintiff. (Doc. 47-1 at 1 ¶ 2). During the arrest, Plaintiff was in possession of a shotgun, which he immediately placed on the hood of his vehicle as he exited the vehicle and surrendered himself to police. (Doc. 47 at 3). As for the circumstances Smith perceived on the day of the incident in this case, the Court noted previously that Plaintiff was unarmed and sitting motionless in a parked car when Defendant Smith encountered him.

In this circuit, an officer may use deadly force to eliminate a threat of serious physical harm to either the officer or others, or to prevent the escape of a suspect who presents a threat to others. *Singletary v. Vargas*, 804 F.3d 1174, 1181 (11th Cir. 2015) (citing *McCullough v. Antolini*, 559 F.3d 1201 (11th Cir. 2009); *Morton v. Kirkwood*, 707 F.3d 1276 (11th Cir. 2013)). Defendant Smith has not directed the Court to any evidence in the Record which would indicate that Plaintiff made any verbal or physical threats toward the officers. Defendant Smith had no knowledge of Plaintiff committing a violent crime at any time before the incident on Richard James Road, nor had Plaintiff driven his car in an aggressive or threatening manner prior to Smith discharging his weapon. (Doc. 47 at 14–16). Defendant Smith even concedes that he did not believe his life was in danger when he began shooting. (Doc. 42-3 at 31–32). Instead, Smith asserts that he feared for Defendant Peterson's safety. (*See generally* Docs. 40-1 & 48).

---

facts in the light most favorable to Plaintiff, the Court finds that no warnings or commands were given by Defendants before the shooting occurred. Therefore, as to this issue, no genuine dispute of fact remains for the purposes of this motion.

Yet, viewing the facts in the light most favorable to Plaintiff, Plaintiff presented no threat to the officers attempting to recapture him, nor did Plaintiff present a threat to himself or members of the public. Thus, the threat Defendant Smith perceived prior to using deadly force was unreasonable, and therefore, this factor weighs in Plaintiff's favor.

In sum, the Court finds that Plaintiff has presented facts which, viewed in the light most favorable to him, would allow a reasonable jury to find that Defendant Smith's use of deadly force against Plaintiff was objectively unreasonable, and therefore, a violation of Plaintiff's constitutional rights.

### b. *Clearly Established Law*

The Court now turns to whether Plaintiff has shown that Defendant Smith violated clearly established law when he used objectively unreasonable force against Plaintiff. In the Eleventh Circuit, there are three ways a plaintiff can show that his right was clearly established. Plaintiff must point to either (1) "case law with indistinguishable facts," (2) "a broad statement of principle within the Constitution, statute, or case law," or (3) "conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291–92 (11th Cir. 2009). Additionally, "'[c]learly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear that every reasonable officer would understand that what he is doing' is unlawful." *Charles v. Johnson*, 18 F.4th 686, 698 (11th Cir. 2021) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)) (internal citations omitted). "The critical question is whether the law gave the officer 'fair warning' that his conduct was unconstitutional."[8] *Piazza*, 923 F.3d at 955 (citing *Glasscox v. City of Argo*, 903 F.3d 1207, 1217–18 (11th Cir. 2018)).

As discussed above, Defendant Smith, without warning, used deadly force against Plaintiff who was an unarmed, non-violent escapee sitting still in a parked car in circumstances previously arranged by Defendants and Plaintiff's brother. (*See* Docs. 40-1 & 47). The

---

[8] The Eleventh Circuit relies upon factual similarities as opposed to the specific constitutional amendment underlying an excessive force claim when determining whether particular conduct was clearly established. *See Piazza*, 923 F.3d at 955–56 (relying on excessive force cases arising under the Fourth, Eighth, and Fourteenth Amendments in determining that the tasing of an incapacitated, unresisting detainee was clearly established at the time of the alleged conduct); *see also Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997) (holding that qualified immunity protects a defendant from claims of excessive force if "case law, in *factual* terms, has not staked out a bright line[.]"). Thus, for the purposes of the clearly established law analysis, the Court examines cases involving excessive force claims brought under both the Fourth and Fourteenth Amendments.

Eleventh Circuit has, on a number of occasions, rejected an officer's use of deadly force against a suspect who was not attempting to flee and who did not pose an immediate threat to officers or to others. *See Morton v. Kirkwood*, 707 F.3d 1276, 1283 (11th Cir. 2013) (holding that a constitutional violation occurred when an officer "shot an unarmed man in a stationary vehicle while having no reason to believe" the man was a danger to anyone); *Salvato v. Miley*, 790 F.3d 1286, 1293–94 (11th Cir. 2015) (finding a Fourth Amendment violation where an officer shot a suspect who initially resisted arrest and struck the officer but who had retreated beyond striking distance when the officer shot him without warning). As noted, Plaintiff was unarmed and sitting still with his hands on the wheel of the car. Plaintiff posed no apparent threat to either Defendant. Accordingly, the Court finds that Plaintiff's right to be free from the type of excessive force used by Defendant Smith under these circumstances was clearly established at the time Smith fired six shots at Plaintiff's car.

Defendant Smith asserts that his use of force was done "in a good faith attempt to prevent the escape of a felon he believed may have been armed." (Doc. 40-1 at 6). Even if the Court were to accept Defendant Smith's argument that Plaintiff was attempting to escape before a single shot was fired by either Defendant, Smith's conduct still violates clearly established law. The Supreme Court and the Eleventh Circuit have held that officers may not use deadly force against a fleeing, nondangerous suspect. *Tennessee v. Garner*, 471 U.S. 1 (1985) (holding a police officer can only use deadly force to prevent the escape of a fleeing non-violent felony suspect when the suspect poses an immediate threat of serious harm to police officers or others); *Vaughan v. Cox*, 343 F.3d 1323, 1333 (11th Cir. 2003) (affirming denial of summary judgment for an officer where the only danger presented by plaintiff's continued flight was the risk of an accident). As noted, there was no basis from which Defendant Smith could have reasonably believed that Plaintiff posed an immediate threat of serious harm to Defendant Smith, Defendant Peterson, or anyone else. Thus, Defendant Smith had fair notice that the use of deadly force was unlawful under the circumstances, regardless of whether Plaintiff had attempted to flee the scene.

In sum, because a reasonable jury could find that Defendant Smith violated Plaintiff's Fourteenth Amendment rights by using objectively unreasonable force against him, and Plaintiff's right was clearly established under Supreme Court and Eleventh Circuit caselaw,

Defendant Smith is not entitled to qualified immunity on Plaintiff's Fourteenth Amendment excessive force claim. Accordingly, Defendant Smith's motion for summary judgment on Plaintiff's claim under 42 U.S.C. § 1983 is **DENIED**.

### 2. Defendant Peterson

#### a. Constitutional Violation

As an initial matter, the Court notes that Plaintiff has pointed to little Record evidence supporting his claim that Defendant Peterson's use of force against him was excessive. In the Eleventh Circuit, however, a court may not grant summary judgment solely by virtue of a party's default. *Jones v. Pandey*, 390 F. Supp. 2d 1371, 1375 (M.D. Ga. 2005) (citing *Trs. Of Cent. Pension Fund of Int'l Union of Operating Eng'g & Participating Emps. v. Wolfe Crane Serv., Inc.*, 374 F.3d 1035, 1039 (11th Cir. 2004)). Instead, the Court must conduct its own independent review of the Record to determine whether if a genuine issue of material fact remains and address the merits of Defendant's motion. *See United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave.*, 363 F.3d 1099, 1102–03 (11th Cir. 2004).

After approaching Plaintiff's parked vehicle and while he was standing approximately four feet away from the rear of Plaintiff's car, Defendant Peterson fired a shot at the rear tire to disable the vehicle. (Doc. 48 at 2); (Doc. 47-2 at 6 ¶ 41). This was the only time Defendant Peterson discharged his weapon, and Plaintiff concedes that the bullet that struck him did not come from Peterson's gun. (Doc. 47-2 at 9 ¶ 60).

Defendant Peterson's actions, about which there is no genuine dispute, evince an "effort to temper or limit" the force used in recapturing Plaintiff. *See Kingsley*, 576 U.S. at 397. Given his proximity to Plaintiff's vehicle when he shot the tire, Peterson would have been able to quickly apprehend Plaintiff without the need for additional force. Furthermore, Defendant Peterson did not use deadly force. (*See generally* Doc. 47-1). Rather, shooting the tire to disable the vehicle was not "more severe than [was] necessary to achieve [the] permissible governmental objective" of recapturing Plaintiff and returning him to custody. *Piazza*, 923 F.3d at 952.

Thus, based on the Court's independent review of the Record, the *Kingsley* factors, weigh against a finding that Defendant Peterson committed a constitutional violation. As such, no reasonable jury could find that Defendant Peterson's use of force against Plaintiff was

"excessive in relation to [its] purpose." *Kingsley*, 576 U.S. at 398. Defendant Peterson is thus entitled to qualified immunity, and his motion for summary judgment on Plaintiff's claim under 42 U.S.C. § 1983 is **GRANTED**.[9]

### D. **Plaintiff's State Law Claims**

Defendants move for summary judgment on Plaintiff's state law claims for assault and battery and intentional infliction of emotional distress, asserting that those claims are barred by Georgia state law official immunity. (Doc. 40-1 at 14).

Georgia's doctrine of official immunity is analogous to qualified immunity under federal law and provides that "a public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure." *Grammens v. Dollar*, 697 S.E.2d 775, 777 (Ga. 2010) (internal quotations omitted). Thus, the initial determination of whether Defendants are entitled to official immunity from Plaintiff's state law claims turns on whether their actions were discretionary or ministerial. *Id.* In Georgia, a ministerial act is one that is "simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty[,]" while a discretionary act "calls for the exercise of personal deliberation and judgment, which . . . entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." *Id.* If the disputed conduct was committed in a discretionary capacity, an officer will be immune from liability under state law, unless the officer acted with "actual malice or an actual intent to cause injury in the performance of their official functions." *Selvy v. Morrison*, 665 S.E.2d 401, 404 (Ga. Ct. App. 2008).

### 1. **Ministerial Duty**

Plaintiff does not dispute that Defendant Smith was engaged in a discretionary function.[10] (*See generally* Doc. 47). Plaintiff, however, argues that a Clinch County use of force

---

[9] Because the Court finds that Defendant Peterson did not violate Plaintiff's constitutional rights under the Fourteenth Amendment, the Court need not decide whether Peterson violated a clearly established right. *See Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1305 (11th Cir. 2009) (quoting *Smith v. Siegelman*, 322 F.3d 1290, 1295 (11th Cir. 2003)) ("Without a . . . violation, there can be no violation of a clearly established right.").

[10] As noted, Plaintiff does not dispute that Defendants were acting within their discretionary authority for purposes of qualified immunity. (*See* Doc. 47 at 17–18). Nor does Plaintiff dispute that Defendant Smith was engaged in a discretionary act when he fired his weapon at Plaintiff's car. Rather, Plaintiff asserts that Defendants are not entitled to official immunity because their use of deadly force was not done in lawful self-defense. (*See id.* at 18–20).

policy established a ministerial duty not to use excessive force applicable to Defendant Peterson. (Doc. 47 at 20). The Court is unpersuaded.

Although a ministerial duty may be established with "evidence such as a written policy, unwritten policy, a supervisor's specific directive, or a statute[,]" such "procedures or instructions . . . must be so clear, definite, and certain as merely to require the execution of a relatively simple, specific duty." *Roper v. Greenway*, 751 S.E.2d 351, 353 (Ga. 2013) (internal citations and quotations omitted). But when a written policy "requires a public official to exercise discretion in its implementation by determining if the necessary prerequisite condition to the ministerial act exists, the policy does not require the performance of a ministerial duty," and the official is entitled to official immunity. *Hill v. Jackson*, 783 S.E.2d 719, 725 (Ga. Ct. App. 2016) (citing *Grammens*, 697 S.E.2d at 777–78). Put another way, "[w]here the written policy requires the public official to exercise discretion in the implementation of the written policy, the policy does not require the performance of a ministerial duty." *Grammens*, 697 S.E.2d at 778.

The Court rejects Plaintiff's argument for two reasons. First, the policy here prohibits the use of deadly force, providing that "[s]hots shall not be fired to stop any persons[,] including fleeing felons[,] who simply run away to avoid arrest, providing such person does not present physical danger to the public." (Doc. 47-12 at 3 ¶ 4). Rather than clearly setting out a factual situation where an officer would be definitively prohibited from using deadly force, this section of the policy, on its face, calls for officers to use their discretion. The policy calls for officers to use their judgment in determining whether the prerequisite condition— flight for the purpose of avoiding arrest—exists for the duty to refrain from using deadly force to become applicable.

Second, even if the Court were to accept Plaintiff's argument that the policy established a ministerial duty, the Supreme Court of Georgia has, on more than one occasion, rejected the argument that an officer's failure to comply with department policy while engaged in an otherwise discretionary act transforms the officer's conduct into a ministerial act for purposes of official immunity. *See Phillips v. Hanse*, 637 S.E.2d 11, 12 (Ga. 2006) (affirming summary judgment based on official immunity because the officer's violation of the police manual during a high-speed chase did not turn his discretionary act of engaging in the chase into a

18

ministerial one); *Cameron*, 549 S.E.2d at 345–46 (holding that an officer was entitled to summary judgment on official immunity grounds because his violation of traffic laws did not transform his discretionary decision to engage in a high-speed chase into a ministerial act). The existence of the proffered policy therefore makes no difference.

Accordingly, the Court is unpersuaded the Use of Force policy established a ministerial duty upon Defendant Peterson. Furthermore, in following the well-established Georgia law holding that police officers are engaged in discretionary duties when investigating potential crime, attempting to make an arrest, and deciding whether to engage in a high-speed chase, the Court finds that Defendants were engaged in a discretionary function when they used force in their attempt to recapture Plaintiff. *See Gardner v. Rogers*, 480 S.E.2d 217 (Ga. Ct. App. 1996); *Reed v. DeKalb Cnty.*, 589 S.E.2d 584 (Ga. Ct. App. 2003); *Phillips*, 637 S.E.2d 11.

## 2. Discretionary Duty

### a. *Defendant Peterson*

Having found that Defendants were engaged in a discretionary act, the Court now turns to whether Defendant Peterson acted with actual malice or with an actual intent to cause injury, precluding Peterson from receiving official immunity. Actual malice requires a "deliberate intention to do wrong[,]" meaning Defendant Peterson must have "intended to cause the harm suffered by [P]laintiff." *Murphy v. Bajjani*, 647 S.E.2d 54, 59 (Ga. 2007). "Actual intent to cause injury" means "an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury." *Kidd v. Coates*, 518 S.E.2d 124, 125 (Ga. 1999) (noting that the phrase "actual intent to cause injury" has been defined as "contain[ing] aspects of malice, perhaps a wicked or evil motive.").

Here, Plaintiff does not direct the Court to any Record evidence indicating Defendant Peterson acted with actual malice, nor does he argue that Peterson intended to cause an injury to him. (*See generally* Doc. 47). However, the question of whether a public official is entitled to official immunity is a question of law for the Court, and as noted above, the Court must conduct an independent review of the Record in determining whether summary judgment is appropriate. Even after undertaking such review, there are no facts in the Record sufficient to show that Defendant Peterson acted with actual malice or an actual intent to cause injury. Defendant Peterson did not fire any shots directly at Plaintiff. (*See* Doc. 47 & Doc. 47-1 at 9

¶ 28). Instead, he shot at Plaintiff's tire to disable the vehicle and prevent Plaintiff from fleeing. (Doc. 47-2 at 6 ¶ 39). Plaintiff does not dispute this characterization of Peterson's intentions. Furthermore, Plaintiff concedes that Defendant Peterson did not fire the shot that caused Plaintiff's injury.

Therefore, the Court finds, as a matter of law, that no reasonable jury could conclude that Defendant Peterson acted with actual malice or an actual intent to injure Plaintiff. Thus, Defendant Peterson is entitled to official immunity on Plaintiff's state law clams, and summary judgment on those claims is appropriate. Accordingly, Defendant Peterson's motion for summary judgment on Plaintiff's state law claims for assault and battery and intentional infliction of emotional distress is **GRANTED**.

### b. *Defendant Smith*

Defendants contends that Smith is entitled to official immunity because Plaintiff cannot show that he acted with actual malice, arguing specifically that there is no evidence he harbored ill will toward Plaintiff or that he intended to commit a wrong or unlawful act. (Doc. 40-1 at 17, 19). However, the official immunity analysis does not end there. The Court must also consider the second prong of the analysis— whether Defendant Smith intended to cause harm to Plaintiff. *See Kidd*, 518 S.E.2d at 125.

In cases involving police shootings, the Supreme Court of Georgia has held that an officer will not be protected by official immunity if the officer shot intentionally and without legal justification, namely self-defense. *Porter v. Massarelli*, 692 S.E.2d 722, 726 (Ga. Ct. App. 2010) (citing *Kidd*, 518 S.E.2d at 124). However, if the officer shot "in self-defense, then [he] had no actual tortious intent to harm . . . , but acted only with the justifiable intent which occurs in every case of self-defense, which is to use such force as is reasonably believed to be necessary to prevent death or great bodily injury to themselves or the commission of a forcible felony." *Id.* (citation omitted). Here, Plaintiff asserts that Defendant did not act in lawful self-defense because Smith acknowledged that Plaintiff presented no threat of serious physical harm when Smith fired the first two shots at Plaintiff's car. (Doc. 47 at 19). Plaintiff further asserts that Smith was not justified in continuing to fire even after Plaintiff began driving away from the officers. (*Id.*) Defendant Smith claims that he shot Plaintiff after he attempted to flee

to prevent Plaintiff from escaping and to protect Defendant Peterson whom he believed had been threatened by Plaintiff. (Doc. 40-1 at 10).

In light of the plain factual disputes over whether Smith discharged his weapon before or after Plaintiff's car began moving and whether warnings were given prior to Defendants opening fire, the Court finds that genuine issues of material fact remain as to whether Defendant Smith acted with actual malice or an actual intent to cause injury to Plaintiff. These factual disputes preclude a determination, as a matter of law, that Defendant Smith is entitled to official immunity from Plaintiff's state law assault and battery and intentional infliction of emotional distress claims. *See Porter*, 692 S.E.2d at 726 (finding jury question existed as to the reasonableness and justification of an officer's actions, precluding summary judgment on state law claims where evidence was in dispute as to whether officer shot suspect to protect himself); *DeKalb Cnty. v. Bailey*, 736 S.E.2d 121, 126 (Ga. Ct. App. 2012) (affirming denial of officer's motion for summary judgment on state law claims that officer was not entitled to official immunity because he was not justified in shooting fleeing suspect who never threatened officer with weapon and had not committed serious crime); *Smith v. LePage*, No. 1:12-cv-740, 2015 WL 13260394 (N.D. Ga. Mar. 31, 2015) (denying motion for summary judgment on state law claims where questions of fact remained as to whether Defendants acted with actual malice).

Accordingly, Defendant Smith's motion for summary judgment on Plaintiff's state law claims for assault and battery and intentional infliction of emotional distress is **DENIED**.

## V.    <u>CONCLUSION</u>

As set forth above, Defendants' Motion for Summary Judgment (Doc. 40) is **GRANTED-IN-PART** and **DENIED-IN-PART** as follows:

a. Defendants' Motion for summary judgment with respect to Plaintiff's excessive force claim under 42 U.S.C. § 1983, to the extent Plaintiff's claim arises under the Eighth Amendment, is **GRANTED** as to Defendant Peterson and Defendant Smith.

b. Defendants' Motion for summary judgment with respect to Plaintiff's excessive force claim under 42 U.S.C. § 1983, to the extent Plaintiff's claim arises under the Fourth Amendment, is **GRANTED** as to Defendant Peterson and Defendant Smith.

c.  Defendants' Motion for summary judgment with respect to Plaintiff's excessive force claim under 42 U.S.C. § 1983, to the extent Plaintiff's claim arises under the Fourteenth Amendment, is **GRANTED** as to Defendant Peterson.

d.  Defendants' Motion for summary judgment with respect to Plaintiff's excessive force claim under 42 U.S.C. § 1983, to the extent Plaintiff's claim arises under the Fourteenth Amendment, is **DENIED** as to Defendant Smith.

e.  Defendants' Motion for summary judgment with respect to Plaintiff's state law claims for assault and battery and intentional infliction of emotional distress is **GRANTED** as to Defendant Peterson.

f.  Defendants' Motion for summary judgment with respect to Plaintiff's state law claims for assault and battery and intentional infliction of emotional distress is **DENIED** as to Defendant Smith.

Accordingly, the only claims that remain in the above-styled action are Plaintiff's § 1983 excessive force claim against Defendant Smith and Plaintiff's claims for assault and battery and intentional infliction of emotional distress against Defendant Smith. As there are no remaining claims against Defendant Peterson, he is hereby **DISMISSED** as a party to the action.

Furthermore, the Motion for summary judgment having been denied as to Defendant Smith, this matter is ready for trial. Therefore, the trial in this matter is noticed for the Valdosta Division February 2025 trial term to begin on Monday, February 3, 2024. A separate order or notice to prepare a proposed pretrial order will be issued.


**SO ORDERED**, this 30th day of September 2024.


/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**